UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KIAMA DOYLE,<br><br>    Plaintiff,<br><br>    v.<br><br>CAPITAL ONE NATIONAL ASSOCIATION, DAVID KUCERA, KEVIN GIBBONS, and ELIZABETH JANNUSH,<br><br>    Defendants. | No. 19 CV 719<br><br>Judge Manish S. Shah |

**MEMORANDUM OPINION AND ORDER**

Kiama Doyle, who was the only black employee on her floor at Capital One, alleges that her coworker Elizabeth Jannush targeted Doyle with a variety of hostile acts. At one point, Doyle felt the need to call the police on Jannush to report an assault. Doyle alleges that the mistreatment she experienced amounts to civil rights violations under Title VII and § 1981 and tortious conduct under state law. The defendants—Jannush, Doyle's supervisors Kevin Gibbons and David Kucera, and Capital One—move to dismiss many of Doyle's claims. The issues boil down to whether Doyle's allegations suffice to allege illegal misconduct in the workplace. They do not.

I.   **Legal Standard**

A complaint only needs to contain a short and plain statement that plausibly suggests a legal right was violated. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556–58 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 677–80 (2009). When

evaluating a motion to dismiss, I assume that all the factual allegations in the complaint are true and draw all reasonable inferences in the plaintiff's favor. *Iqbal* at 678–79. I do not have to accept legal conclusions or "mere conclusory statements" as true. *Id.* In other words, the complaint must contain enough factual allegations to reasonably infer that the unlawful conduct occurred.

If a complaint "fails to state a claim" under Federal Rule of Civil Procedure 12(b)(6), the plaintiff should have at least one opportunity to amend it. *Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana*, 786 F.3d 510, 519 (7th Cir. 2015). If, however, the plaintiff alleges facts that make her legal claim impossible, I may dismiss her claim with prejudice. *See Benders v. Bellows & Bellows*, 515 F.3d 757, 767 (7th Cir. 2008) ("a plaintiff can plead herself out of court by alleging facts that show she is not entitled to a judgment") (internal citation omitted).

## II. Facts

Kiama Doyle worked as an administrative assistant at Capital One from April to November 2018. [1] ¶¶ 22, 123.[1] She was the only black employee on her floor. *Id.* at ¶ 41. From the start, Doyle experienced serious conflict with another administrative assistant, Elizabeth Jannush, who was white. *Id.* at ¶¶ 16, 19. Jannush described herself as senior managing director David Kucera's "right-hand man" and made Doyle's work environment difficult. *Id.* at ¶¶ 15, 42. Jannush told Doyle not to socialize or take lunch breaks and provided conflicting job instructions.

---

[1] Bracketed numbers refer to entries on the district court docket.

*Id.* at ¶¶ 26, 28. Jannush also tracked Doyle's whereabouts, including her bathroom and copier use. *Id.* at ¶¶ 48, 66, 76.

To Doyle's face, Jannush called Doyle a "damn ape," a "token" hire, and said "your people love watermelon." *Id.* at ¶¶ 35, 38, 40. Behind her back, Jannush complained about Doyle's physical therapy visits (due to a recent car accident) and made fun of Doyle's weight. *Id.* at ¶¶ 29, 31, 33, 36, 37, 55–56. At meetings, Jannush and her friends sat far away from Doyle to isolate her. *Id.* at ¶ 80. Jannush also misreported fraud on Doyle's expense accounts, causing additional difficulties for Doyle. *Id.* at ¶¶ 78–79.

Early on, Doyle reported some, but not all, of Jannush's conduct. Kevin Gibbons, Doyle's supervisor and a managing director, told Doyle to ignore Jannush's comments about physical therapy and her meddlesome behavior. *Id.* at ¶¶ 32, 50. At some point in July, Doyle emailed Kucera about Jannush's behavior. *Id.* at ¶ 51. Jannush saw the email and yelled at Doyle, characterizing her as an angry black woman. *Id.* at ¶ 52–53. Kucera never responded to Doyle's email, but in late July, Doyle learned that she, Jannush, Kucera, and Gibbons were scheduled to attend a meeting with a human resources representative in late August. *Id.* at ¶¶ 54, 59. At the August meeting, Jannush admitted to bullying and harassing Doyle. *Id.* at ¶ 60. After the meeting, Jannush received an email instructing her to stop her behavior. *Id.* at ¶ 61.

At some point in August, Doyle attended a training session in Virginia, during which she learned that Jannush had been complaining to others about Doyle

3

receiving "special treatment." *Id.* at ¶ 73. Gibbons again told Doyle to ignore Jannush's comments. *Id.* at ¶¶ 74–75.

In early October, Doyle reported to Gibbons that there had been no change in Jannush's behavior. *Id.* at ¶ 82. Gibbons responded that the company took harassment and bullying very seriously. *Id.* at ¶ 83. Doyle also learned that Kucera and the human resources department wanted Doyle to receive the same email that had been sent to Jannush about behavior. *Id.* at ¶ 84. Doyle, however, did not understand why she was also being reprimanded. ¶¶ 85–86. She contacted, among others, a Capital One associate relations representative to discuss the matter. *Id.* A few days later, the associate relations representative told Doyle that her inquiry was being investigated. *Id.* at ¶¶ 87–88.

Over the next few weeks, Doyle's work environment failed to improve, and in late October, Doyle filed charges with the Equal Employment Opportunity Commission. *Id.* at ¶ 92. A few days later, Gibbons met with Doyle over lunch to discuss harassment and bullying. *Id.* at ¶ 93. Gibbons also rescheduled the weekly team meeting to take place after his lunch with Doyle, so that he could address the issues with the entire group, including Jannush. *Id.* at ¶¶ 94–95.

Gibbons's lunch with Doyle ran longer than expected, and the rescheduled team meeting was almost done by the time they returned. *Id.* at ¶ 96. Gibbons needed to make a phone call, so he told Doyle to tell the group to wait and that he would be right there. *Id.* ¶¶ 97–99. While waiting for Gibbons in the conference room, events spiraled out of control.

Jannush and her colleagues started complaining about Doyle receiving special treatment. *Id.* at ¶ 101. Doyle decided to record their conversation, and at some point, told them that she was recording. *Id.* at ¶¶ 102–103. Jannush yelled, "Are you crazy?! You must be out of your fucking mind!" and put her knee on the table, as if she was going to lunge at Doyle. *Id.* at ¶¶ 104–105. Doyle left in tears and reported Jannush's conduct to Gibbons. *Id.* at ¶¶ 105–107. Gibbons told Doyle that he would be with her right after his call finished and to get a cup of coffee in the meantime. *Id.* at ¶ 108.

Doyle then decided to call the police. *Id.* at ¶¶ 109–111. Doyle told Jannush that the police were coming, and Jannush, at the direction of another colleague, left work. *Id.* at ¶¶ 111–112. Two days later, Doyle called the police again when she saw Jannush in the building. *Id.* at ¶ 114. Security and the same colleague stopped the police from entering the office to arrest Jannush. *Id.* at ¶¶ 115–118. That evening, a human resources representative called Doyle to say that Doyle was being placed on paid leave while the company investigated this second incident. *Id.* at ¶¶ 119–120. Approximately one month later, a human resources representative called Doyle again to say that Doyle was being terminated for unprofessional behavior and material misrepresentation. *Id.* at ¶ 123.

III. **Analysis**

At issue in the defendants' motions to dismiss are Doyle's claims against the individual defendants under Title VII and § 1981, her intentional infliction of emotional distress claim against all the defendants, and whether the Illinois Human

Rights Act and Illinois Workers' Compensation Act bar Doyle's tort claims against Capital One.

### A. Title VII Claims Against Kucera, Gibbons, and Jannush

Individuals cannot be personally sued under Title VII. *Williams v. Banning*, 72 F.3d 552 (7th Cir. 1995); *Nischan v. Stratosphere Quality, LLC*, 865 F.3d 922, 930 (7th Cir. 2017) (there is no individual liability under Title VII). Doyle's claims against Kucera, Gibbons, and Jannush under Title VII are dismissed with prejudice.

### B. Section 1981 Claims Against Kucera, Gibbons, and Jannush

Unlike Title VII, § 1981 of the Civil Rights Act of 1866 permits individual liability if the individual employee participated in the illegal act. *Musikiwamba v. ESSI, Inc.*, 760 F.2d 740, 753–54 (7th Cir. 1985); *Smith v. Bray*, 681 F.3d 888, 896 (7th Cir. 2012), *overruled on other grounds by Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760 (7th Cir. 2016). To allege individual participation, a plaintiff can show that the employee:

- Personally discriminated against the plaintiff or aided in the unlawful discrimination. *Musikiwamba*, 760 F.2d at 754.

- Acted with deliberate or reckless indifference—like intentionally turning a "blind eye"—to the illegal acts. *Nanda v. Moss*, 412 F.3d 836, 842–43 (7th Cir. 2005). While *Nanda* is about individual liability under § 1983, the same standard applies to § 1981. *See Smith*, 681 F.3d at 899 ("As with § 1981, individual liability under § 1983 is appropriate where the individual

6

defendant caused or participated in a constitutional deprivation.") (internal quotation and citations omitted).

- Acted with discriminatory intent, which caused a decision-maker to take an adverse action against the plaintiff. *Id.* Irrespective of the decision-maker's intent, the subordinate employee can be sued in her personal capacity. *Id.*

   1. *Kucera's and Gibbon's Participation in Racial Harassment and Racial Discrimination*

Doyle alleges that Kucera and Gibbons became "personally involved" in the illegal conduct due to their "willful and deliberate inaction in the face of multiple complaints" and by "placing value in Jannush." [31] at 6. The supporting allegations, however, do not plausibly suggest that Gibbons or Kucera acted with deliberate or reckless indifference, as is required to impose individual liability.

Here, against Kucera, the only act of inaction Doyle alleges is that Kucera did not respond to one email. [1] ¶ 54. This fact alone does not plausibly suggest deliberate indifference.

Doyle alleges more facts of inaction against Gibbons. But it is not reasonable to infer that Gibbons knew or should have understood that Jannush was mistreating Doyle because she was black. Telling Doyle to ignore Jannush's complaints about Doyle leaving work to attend physical therapy or Doyle receiving special treatment, [1] ¶¶ 32, 75, does not suggest that Gibbons was indifferent (let alone deliberately or recklessly) to race-based misconduct. While telling Doyle to again ignore Jannush's practice of tracking, and possibly stalking, Doyle's bathroom and copier visits, [1] ¶¶ 50, 76, seems irresponsible, Doyle does not allege that Gibbons ever knew about

7

Jannush's racial insults, which would have put Gibbons on notice of racially motivated misconduct. Thus, unlike the plaintiff in *Nanda*, 412 F.3d at 843, who alleged that the school dean ignored information specifically about sex-based discrimination, Doyle's allegations against Gibbons require too much speculation to reasonably infer that Gibbons purposefully ignored complaints of race-based misconduct.

Furthermore, Doyle alleges facts that weaken her own argument. In August 2018, both Kucera and Gibbons attended a meeting about Jannush's behavior, after which Jannush received an email reprimanding her about her conduct. [1] ¶¶ 59, 61. That October, Gibbons told Doyle that the company takes harassment and bullying very seriously. [1] ¶ 83. In late October, after discussing harassment and bullying with Doyle, Gibbons rescheduled the team meeting in order to address the issues with everyone. [1] ¶¶ 94–96. These allegations suggest that Kucera and Gibbons did not turn a "blind eye" to Doyle's complaints.

Doyle also alleges that Kucera and Gibbons deliberately ignored Jannush's conduct because Jannush was invaluable to them, so much so that they both "acquiesced" to Doyle's termination. [31] at 6. The only fact supporting this allegation is Jannush's statement that she was "Dave's right-hand man." [1] ¶ 42. This boast, alone, is not enough to suggest that Jannush, an administrative assistant, was so indispensable that Kucera and Gibbons deliberately ignored Jannush's racism and terminated Doyle at Jannush's request.

8

The complaint fails to allege that Kucera and Gibbons acted with such "deliberate and reckless indifference" to have personally participated in unlawful racial harassment and discrimination. Counts I and II against them are dismissed without prejudice.

   2.   *Jannush's Participation in Racial Discrimination*

To claim that Jannush, a subordinate employee, personally participated in racial discrimination, Doyle needs to show that Jannush's racially motivated conduct caused Doyle to suffer an adverse employment action. *Smith*, 681 F.3d at 899. Here, Doyle alleges that Jannush's outburst at the conference room table "launched the inquiry into [Doyle's] behavior," which led to Doyle's termination. [31] at 9. This fact, however, is insufficient to state a claim.

Jannush's outburst may have launched the chain of events that led to Doyle's termination, and Jannush's comments suggest race-based hostility. But the complaint cannot be read to suggest that Jannush caused a decision-maker to terminate Doyle. In *Smith*, a human resources manager substantially involved in the termination decision was individually liable for a § 1981 violation under the cat's paw theory. 681 F.3d at 900. Here, Doyle states that Jannush was an "administrative assistant" and that Jannush considered herself Kucera's "right-hand man." [1] ¶¶ 16, 42. These two factual allegations do not plausibly suggest that Jannush had a sufficient level of involvement to hold her responsible for the adverse employment action.

Count II against Jannush is dismissed without prejudice.

9

## C. Intentional Infliction of Emotional Distress Against All Defendants

Capital One, Kucera, Gibbons, and Jannush all move to dismiss Doyle's intentional infliction of emotional distress claim.

Under Illinois law, Doyle must allege that: 1) the conduct was extreme and outrageous; 2) the defendant intended to cause, or knew that there was a high probability of, the severe emotional distress; and 3) the defendant's conduct in fact caused the severe emotional distress. *Honaker v. Smith*, 256 F.3d 477, 490 (7th Cir. 2001), citing *McGrath v. Fahey*, 126 Ill. 2d 78 (1988), citing the Restatement (Second) of Torts § 46 (1965).

"Extreme and outrageous" conduct is a legal standard, not a moral one. It does not cover "[m]ere insults, indignities, threats, annoyances, petty oppressions or trivialities." *Id.* And it is harder to show in employment contexts. *See e.g. Richards v. U.S. Steel*, 869 F.3d 557, 567 (7th Cir. 2017) ("Liability for emotional distress, as a common-law tort, is even more constrained in the employment context.") Everyday job stresses—like personality conflicts, disciplinary matters, job performance issues, transfers, and terminations—while distressful, do not amount to unlawful conduct because otherwise nearly every employee could sue her employer. *See Schroeder v. RGIS, Inc.*, 2013 IL App (1st) 122483, ¶ 27; *Lundy v. City of Calumet City*, 209 Ill.App.3d 790, 793–94 (1st Dist. 1991); *Pratt v. Caterpillar Tractor Co.*, 149 Ill.App.3d 588, 591 (3rd Dist. 1986); *Heying v. Simonaitis*, 126 Ill.App.3d 157, 166 (1st Dist. 1984). "Extreme and outrageous" conduct can occur when an employer abuses its power over an employee or coerces her to engage in illegal conduct. *See McGrath*, 126

Ill.2d at 86–89; *Milton v. Illinois Bell Telephone Co.*, 101 Ill.App.3d 75, 80–81 (1st Dist. 1981); *Graham v. Commonwealth Edison Co.*, 318 Ill.App.3d 736, 747 (1st Dist. 2000).

*1.     The Conduct of Kucera, Gibbons, and Capital One*

Kucera's, Gibbons's, and Capital One's alleged inaction does not amount to "extreme and outrageous" conduct. In *Welsh v. Commonwealth Edison Co.*, for example, the plaintiffs alleged that they were "demoted, transferred, forced to perform 'demeaning' and 'humiliating' tasks, harassed, intimidated, and threatened with termination." 306 Ill.App.3d 148, 154 (1st Dist. 1999). These tactics, however, did not amount to an abuse of employer power. *Id.* at 154–55.

Here, Doyle alleges that Kuerca did not respond to one email and attended a meeting about Jannush's conduct. [1] ¶¶ 54, 59. She alleges that Gibbons told her to ignore Jannush, met with her multiple times but failed to sufficiently fix the problem, and made her wait (briefly) to discuss the assault. [1] ¶¶ 32, 50, 59, 61, 75, 83–84, 95–96, 108. Against Capital One, Doyle alleges that a human resources representative attended a meeting in August, after which Jannush received a reprimand; that human resources wanted Doyle to receive the same email; that an associate relations representative met with Doyle in October and said that Jannush's conduct was being investigated; that security stopped the police from entering the office; and that the company investigated Jannush's outburst. [1] ¶¶ 59–61, 84, 87–

88, 115, 118–119. Doyle's allegations fail to show any abuse of power or unlawful coercion.[2]

Doyle also alleges that the act of terminating her constitutes "extreme and outrageous" conduct. [1] ¶ 181–182. However, "[s]ettled Illinois law holds that the discharge of an employee at will is within an employer's right and does not constitute the extreme and outrageous conduct which is required to maintain a cause of action." *Pratt*, 149 Ill.App.3d at 591 (internal citations omitted).

A final point about Doyle's claim against these three defendants. Doyle states that they were "negligent in hiring, supervising and retaining" Jannush and other subordinate employees. [1] ¶ 184. These allegations are separate causes of action under a negligence theory, *Doe v. Coe*, 2019 IL 123521, ¶ 33 (not released yet), not an intentional tort claim. *See also Giraldi v. Lamson*, 205 Ill.App.3d 1025 (1st Dist. 1990) (inaction, such as a failure to investigate, and allegations of negligent hiring and supervision, failed to state a claim for intentional infliction of emotional distress).

Count IV against Kucera, Gibbons, and Capital One is dismissed without prejudice. If Doyle intended to bring a separate claim for negligent hiring, she should clarify her theories in an amended complaint.

    2. *Jannush's Conduct*

Jannush's workplace conduct is not "extreme and outrageous" under Illinois law. In *Harris v. First Federal*, the plaintiff, a bank branch manager, reported a

---

[2] *See also Richards*, 869 F.3d at 568 ("Although none of these instances are a credit to a respectful workplace, none of them, either alone or in combination, amount to 'extreme and outrageous' misconduct under Illinois law.").

potential crime at work. 129 Ill.App.3d 978, 979 (1st Dist. 1984). After that, among many other negative consequences, the plaintiff was demoted, relocated, constantly berated and criticized, admonished for taking lunch breaks, and given contradictory job instructions. *Id.* at 979–80. Her coworkers were instructed to follow and monitor her, not answer questions, and isolate her socially. *Id.* The conduct was not "laudable," but because the employer was not coercing the plaintiff to engage in illegal conduct, the court concluded that the plaintiff failed to state a claim for intentional infliction of emotional distress. *Id.* at 982.

Doyle alleges similar embarrassing and humiliating mistreatment. Jannush told Doyle not to take lunch breaks, provided contradictory job instructions, complained about Doyle attending physical therapy and receiving special treatment, made insensitive jokes about Doyle's food and weight, insulted Doyle by calling her a "damn ape" and a "token," tracked Doyle's attendance, stalked Doyle to the bathroom and copier, painted Doyle as an angry black woman, admitted to bullying and harassing Doyle, reported fraud on Doyle's company accounts, badmouthed Doyle to colleagues, and responded to Doyle in a fit of rage after learning that Doyle had been recording her. [1] ¶¶ 26, 28, 31, 33–36, 38, 40, 48, 53, 55, 58, 60, 64, 66, 73, 76, 78, 104.

While Doyle alleges uncivil acts like the plaintiff in *Harris*, and includes allegations of racial animus, Doyle's claim is weaker because the actions here were taken by a coworker, not supervisors. *See Heying*, 126 Ill.App.3d at 159–65 ("personality conflicts" in the workplace, including "heated" ones, do not rise to the

level of "extreme and outrageous" conduct); *Richards,* 869 F.3d at 567–68, *supra* note 4; *see also Bannon v. Univ. of Chicago,* 503 F.3d 623, 626, 630 (7th Cir. 2007) (supervisor's use of racial slurs did not amount to extreme and outrageous conduct). Drawing all reasonable inferences in Doyle's favor, the racist and disruptive actions of Doyle's coworker do not amount to the intentional infliction of emotional distress.

Count IV against Jannush is dismissed without prejudice.[3]

### D. Capital One's Preemption Arguments and Doyle's Tort Claims

Capital One argues that two Illinois statues preempt Doyle's tort claims.

#### 1. *Illinois Human Rights Act*

Because Doyle fails to state a claim for intentional infliction of emotional distress, I need not rule on whether the Illinois Human Rights Act preempts her claim. However, because Doyle may amend her complaint, the preemption issue merits some discussion.

If Doyle's intentional tort claim "is inextricably linked to a civil rights violation such that there is no independent basis for the action apart from the [IHRA]," then the Illinois Human Rights Commission has exclusive jurisdiction over the claim. *Maksimovic v. Tsogalis,* 177 Ill.2d 511, 517 (1997). While Doyle alleges that she suffered from both non-racial and racial misconduct, she relies only on race-based misconduct in her response to Capital One's motion to dismiss, [22] at 4–5, suggesting that her tort claim is rooted in a civil rights claim. *See also Nischan,* 865 F.3d at 934

---

[3] Because Doyle fails to allege "extreme and outrageous" conduct, I do not reach the question of whether Doyle alleges the other necessary elements of an intentional infliction of emotional distress claim.

14

("Because the facts supporting Nischan's tort claim are identical to those supporting her IHRA claim, the two claims are inextricably linked."). Doyle would need to show more to avoid preemption.

## 2. *Illinois Workers' Compensation Act*

Capital One argues that the Illinois Workers' Compensation Act preempts both Doyle's intentional infliction of emotional distress and assault claims. I need only address Doyle's remaining assault claim.

The IWCA protects workers for accidental injuries while on the job by automatically making the employer financially responsible; in return, the Act prohibits employees from suing the employer under common law. *Meerbrey v. Marshall Field & Co.*, 139 Ill.2d 455, 462 (1990). One exception (of four) to this rule is when the injury is not accidental, meaning the employer directed or expressly authorized the conduct, or the employer's alter ego intentionally injured the employee. *Id.* at 463.

Doyle argues that Capital One "authorized" Jannush's assault because Gibbons suggested Doyle get a cup of coffee instead of addressing her concern immediately, and because another colleague and building security prevented police officers from entering the building to arrest Jannush. [22] at 10–11. Doyle's argument relies on the theory that "management's knowledge coupled with lack of follow-up action is equivalent to express authorization of injurious conduct." *McPherson v. City of Waukegan*, 379 F.3d 430, 443 (7th Cir. 2004), citing *Thomas v. Habitat Co.*, 213 F.Supp.2d 887, 892 (N.D.Ill. 2002). In *McPherson*, after hearing a sex-based

15

discrimination complaint, the employer punished the perpetrator that same day. *McPherson*, 379 F.3d at 435–36. Because the employer "took action immediately" and "could not have known any earlier" that the perpetrator posed a risk, the employer did not authorize the plaintiff's injury. *Id.* at 443.

The allegations in Doyle's case are similar enough to warrant the same conclusion. Two days after the alleged assault, a human resources representative told Doyle that the incident was being investigated. [1] ¶ 119. While Capital One's response was not as instantaneous as in *McPherson*, it was still prompt and shows "follow-up action." Additionally, there is no suggestion that Capital One had notice of Jannush's potential reaction to Doyle's unauthorized act of recording. *See also Nischan*, 865 F.3d at 934 ("Although Stratosphere might have known about Nischan's harassment, that's a far cry from saying that Stratosphere commanded the abuse.")

Generally, when applying state law, a federal court must follow that state's supreme court's decisions, or in the absence of any relevant rulings, treat that state's appellate court decisions as authoritative. *See e.g. Rekhi v. Wildwood Indus., Inc.*, 61 F.3d 1313, 1319 (7th Cir. 1995). According to the Illinois Supreme Court, to show employer authorization, the plaintiff must allege that the employer directed, encouraged, or committed the intentional tort. *Collier v. Wagner Castings Co.*, 81 Ill.2d 229, 239 (1980), cited by *Meerbrey*, 139 Ill.2d at 465. Furthermore, Illinois appellate courts have articulated a "specific intent" standard to show authorization, meaning that the employer must have a specific intent to injure the employee. *See e.g. Copass v. Illinois Power Co.*, 211 Ill.App.3d 205, 214 (4th Dist. 1991)("To be

16

sufficient to state a claim of employer complicity in a co-employee's intentional tort, a complaint *must* allege that the employer either 'committed, commanded or expressly authorized' the intentional tort")(internal citations omitted); *Mayfield v. ACME Barrel Co.*, 258 Ill.App.3d 32, 35 (1st Dist. 1994); *Garland v. Morgan Stanley & Co.*, 2013 IL App (1st) 112121, ¶ 29.

No allegations suggest that Capital One specifically intended Jannush's reaction in response to Doyle's admission that she was recording Jannush. Even under the standard as cited in *McPherson*, Gibbons's knowledge of a one-time assault, followed by an investigation, does not suggest "complicity in a co-employee's intentional tort" in the same way that management's knowledge of repeated misconduct and subsequent lack of action would.

Because Capital One did not expressly authorize Jannush's conduct, the injury was accidental, and the IWCA precludes Doyle's assault claim. Count V against Capital One is dismissed without prejudice.

**IV.    Conclusion**

The defendants' motions to dismiss, [12] and [25], are granted. Counts I and II under Title VII are dismissed against the individual defendants with prejudice. The remaining counts at issue are dismissed without prejudice.

ENTER:

Manish S. Shah
United States District Judge

Date: September 30, 2019